GIMBEL BROTHERS (a corporation) Appellant, v. JAMES L. MITCHELL, Respondent.

St. Louis Court of Appeals. Opinion Filed March 2, 1920.

1. **EVIDENCE: Parol Evidence: Not Admissible to Vary Terms of Written Contract.** Parol testimony is not admissible to vary the terms of a written contract, where the meaning is plain and unmistakable.

2. **STATUTES: Statutes of Foreign State: Must Be Pleaded and Introduced in Evidence.** Where the Statute of Limitations of a foreign State, although pleaded, was never introduced in evidence, it cannot be considered or relied upon.

3. **PRINCIPAL AND SURETY: Guaranty Contracts: Construction: Rules and Test Applied to Other Contracts: Meaning.** In constru-

ing contracts of guaranty, the court will apply the rules and tests applied in the construction of other contracts, when undertaking to determine the real meaning of the contract and the language used.

4. ——: ——: **Guarantor Entitled to Notice Within Reasonable Time After Default.** Under a contract of guaranty where guarantor agreed to become responsible as surety to an amount not exceeding $500 per month, continuing from month to month until revoked, waiving notice of separate transactions, etc., it was the duty of the principal to notify the guarantor, when learning of the first default, within a reasonable time thereafter, and before extending further credit to allow the guarantor to revoke his guaranty of future purchases if he so desired, and defendant should not be held liable longer than two months without notice.

5. ——: ——: ——: **Continuing Guaranty: Right of Guarantor to Revoke Guaranty.** Unless the terms of a continuing guaranty forbid it, the law writes into it a power on the part of the guarantor to revoke it.

6. ——: ——: ——: **Guarantor Not Presumed to Know of Default.** A guarantor is not presumed to know, or ascertain for himself, whether or not the purchaser of goods under a continuing guaranty was meeting the payments promptly, especially where the knowledge of default is such as falls within the peculiar knowledge of plaintiff, and which the guarantor could not be expected to know unless notified by plaintiff.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. G. B. Arnold,* Judge.

AFFIRMED.

*Greensfelder & Levi* and *H. C. Whitehill* for appellant.

(1) Parol evidence is inadmissible to explain, modify, diminish or enlarge the terms of a written contract of guaranty or suretyship, such as the written agreement herein sued upon. Hence it was error to admit parol evidence of defendant's intention as to his limitation of the agreement, or of his understanding of the same. Third National Bank v. St. Charles Savings Bank, 244 Mo. 554, 576; Beheret v. Myers, 240 Mo. 58; Watkins Medical Co. v. Holloway (Mo. App.), 181 S. W. 602;

Squier v. Evans, 127 Mo. 514, 518; Shine's Admr. v. Bank, 70 Mo. 524; Royal v. Sutherland, Ann Cas. 1917-B, 623; Friedman Shelby Shoe Co. v. Davidson (Tex. Civ. App.), 189 S. W. 1029; Kansas City v. Youmans, 213 Mo. 151, 166, 167.; Sitron & Co. v. Friedberg (Mo. App.), 195 S. W. 69. (2) The agreement sued upon, is an absolute, original, continuing promise to pay, which is unconditional, except as to the amount of goods purchased in any one month, and amounts to an original undertaking on the part of defendant, and is in the nature of a warranty. 12 R. C. L. 1089; Bank v. Shine, 48 Mo. 456; Mfg. Co. v. During, 85 Mo. App. 131; Linro Medicine Co. v. Moon (Mo. App.), 177 S. W. 322; Bank v. Pillman, 176 Mo. App. 430; Bank v. Stewart, 152 Mo. App: 314; Allen v. Burgener, 156 Mo. App. 265; Pearsell Mfg. Co. v. Jeffreys, 183 Mo. 386; McGinness & Ingles Co. v. Taylor, 22 Mo. App. 513; Cooper Gro. Co. v. Ferguson & Holland, 198 S. W. 573; Stearns v. Jones (Tenn.), 199 S. W. 400; Hurley v. Fidelity & Deposit Co., 95 Mo. App. 88; Watkins Medical Co. v. Holloway (Mo. App.) 181 S. W. 602. (3) Such agreement bound the defendant, unconditionally to satisfy the obligation, which was to pay the debt of Mrs. Reber; and upon her failure to pay, action may be maintained directly against defendant without prior demand upon him, or notice to him of non-performance by Mrs. Reber. Bank v. Shine, 48 Mo. 456; Thornton v. Bowie (Ark.), 185 S. W. 793; Wilson v. White (Ark.), 12 Ann. Cas. 378; Homewood People's Bank v. Hastings (Pa. 1919), 106 Atl. 308; Iron Store National Bank v. Rafferty, 207 Pa. 238; Hess v. Watkins Medical Co. (Ind.), 123 N. E. 433; Wright v. Dyer, 48 Mo. 525; Allen v. Burgener, 156 Mo. App. 265; Barker v. Scudder, 56 Mo. 272; McGowan v. Wells, Trustee (Ky.), 213 S. W. 573; Third National Bank v. St. Charles Savings Bank, 244 Mo. 544, 576; Beheret v. Myers, 240 Mo. 58; Hurley v. Fidelity & Deposit Co., 95 Mo. App. 88; Linro Medicine Co. v. Moon, (Mo. App.), 177 S. W. 322; Bank v. Pillman, 176 Mo. App. 430; Bank v. Stewart, 152 Mo. App. 314; Pearsell Mfg. Co. v. Jeff-

reys, 183 Mo. 386.   (4) A contract of guaranty or suretyship, being made with full knowledge concerning the transaction, will be presumed to be written in the language intended to be used by the guarantor, and is to be construed most strongly against him.   Bank v. Pillman, 176 Mo. App. 438; Hurley v. Fidelity & Deposit Co., 95 Mo. App. 88, 94; Sitron & Co. v. Friedberg (Mo. App.), 195 S. W. 69, 70; Kansas City v. Youmans, 213 Mo. 166; Shine v. Bank, 70 Mo. 533.   (5) Where a cause of action arises under the laws of a foreign State, or a contract is to be performed in a foreign State, and the laws or statutes of such foreign State are not both pleaded and proven at the trial in the courts of Missouri, the courts of this State will determine the rights of the parties according to the common law.   Hence action in the courts of Missouri upon the agreement was not barred by the Statute of Limitations either of the State of Missouri or of the State of Pennsylvania, as under the common law the absence of the defendant from the State of Pennsylvania operated to suspend the running of the Statute of Limitations independent of such statute.   R. S. 1909, sections 1895, 6281, 6282; Daniels v. Gallagher (Mo. App.), 189 S. W. 644; Rialto Co. v. Miner, 183 Mo. App. 119; Sterling v. Parker-Washington Co., 185 Mo. App. 192; Lee v. Railway, 195 Mo. 400; Mathieson v. Railroad, 219 Mo. 542; Thompson v. Railroad, 243 Mo. 336; Baker v. St. Louis, San Francisco R. R. Co. (Mo. App.), 172 S. W. 1185; Cobb v. Houston, 117 Mo. App. 645; Tennent v. Union Central Life Ins. Co., 133 Mo. App. 345; Shelton v. Metropolitan Street Ry. Co., 167 Mo. App. 404; Madden v. Railway Co., 167 Mo. App. 143; Rashall v. Railway Co., 249 Mo. 509.

*Lester M. Hall* for respondent.

(1) When doubt exists as to the meaning of a guaranty, defendant has the right to his version of the contract, and in ascertaining what was the understanding of the parties, the circumstances attending the whole

transaction are to be looked into. Deniston v. Schaal, 5 Super. Ct. 632 (Pa.); Aldridge v. Eshluven, 46 Pa. 420; Pingrey on Suretyship, sec. 356; Merchants National Bank v. Cole, 83 Ohio 50; Ulster Co. Savings Bank v. Young, 161 N. Y. 30; Hurlbut v. Kephat, 50 Colo. 359-360. With this rule our courts are in full accord. Beers v. Strimple, 116 Mo. 184; Gray v. Davis, 89 Mo. App. 450; Kansas City to use, etc., v. Youmans, 213 Mo. 167; 32 Cyc, pages 71-72. (2) Parol testimony is admissible, not to vary, but to arrive at the intention and understanding of the meaning of the language used. Merchants National Bank v. Cole, 83 Ohio 50; Smith v. Van Wyck, 49 Mo. App. 525. (3) When this intention is arrived at, the contract must be strictly construed. Leavel v. Porter, 52 Mo. App. 640; Erath & Flynn v. Allen & Son, 55 Mo. App. 113; Morgan v. Boyer, 39 Ohio St. 326. (4) The surety's liability is not to be extended by implication beyond the express terms of the instrument. Kansas City to use, etc., v. Youmans, 213 Mo. 165; London and S. F. Bank v. Parrott, 125 Cal. 481-2; Douglass et al. v. Reynolds et al., 7 Peters, 122. (5) Sureties are favorites of the law. If there be an ambiguity in the contract, the construction should be in favor of the surety. Hill Mercantile Co. v. Rotan Grocery Co. (Texas), 127 S. W. 1080; Kansas City to use, etc., v. Youmans, 213 Mo. 182 (LAMM, J.); Beers v. Strimple, 116 Mo. 184; Gray v. Davis, 89 Mo. App. 450. (6) While the contract sued upon continued "from month to month," it was not an unlimited suretyship to the aggregate of $500. Each month's purchases were one complete transaction, requiring a complete settlement, and respondent's liability extended to but one month at a time. Respondent could not be held for a running account for an unlimited number of months. Delbridge v. L. H. P. & C. B. & L. Assn., 82 Ill. App. 388, 122 N. Y. App. 648; Nelson v. Shreve, 94 Mo. App. 526; Davis v. Wells, 104 U. S. 170; Gerka v. Brewing Co., 22 Ohio Circuit 671. (7) The creditor must deal with the surety in good faith, otherwise, if the surety is damaged by his

failure to do so, the surety is discharged. In order to hold respondent liable for purchases subsequent to June, 1912, good faith required that appellant should have given notice of the default on the June account, and thus have given respondent an opportunity to revoke his contract and prevent cumulative losses, and that within reasonable time. Pingrey on Suretyship, secs. 352-3-4; Taussig et al. v. Reid et al., 145 Ill. 494; Bank v. Scudder, 56 Mo. 272; Crafts v. Isham, 13 Conn. 33; Douglass et al v. Reynolds et al., 104 U. S. 170; Stearns on Suretyship, sec. 107; 2 Parsons on Contracts, sec. 23. (8) Having failed to notify respondent of the default on the June account within a reasonable time, no liability attached to respondent for the account of July and subsequent months, and as to future purchases the contract was of no effect. Being dead, it could not be revived by subsequent payments by Reber. (9) The account for June, as also for July and August, was eventually paid in full by Reber, and upon such payment respondent's liability under the contract was finally discharged. The rule that payments on a running account will be applied to the oldest items is too well settled to require authorities. (10). The contract having no fixed limit of expiration, should be held to expire within a reasonable time. Such reasonable time would be the time fixed by the Statutes of Limitation. This period expired even under the laws of this State before the commencement of this action. Wilson's Admr. v. Wilson, 1 Mc-Mull. Eq. (S. C.) 329; Howland v. Edmunds, 24 N. Y. 307; Herrick v. Wolverton, 41 N. Y. 584; Doe v. Thompson, 22 N. H. 217. It is analogous to a note payable on demand. Dorland v. Dorland, 5 Pac. Rep. 77; Douglas v. Sargent, 4 Pac. Rep. 861; Palmer v. Palmer, 36 Mich. 487; Bowman v. McChesney, 22 Grattan 609; Young v. Weston, 39 Maine 492; Jamison v. Jamison, 72 Mo. 642.

NIPPER, C.—This case originated in the Circuit Court of the City of St. Louis, by plaintiff filing its petition, wherein it is alleged the defendant is indebted to

it in the sum of $492.17, by reason of a written guaranty; whereby the defendant became responsible for the payment of merchandise, bought by one, Mrs. G. B. Reber, to an amount not to exceed $500 per month.

The answer admitted:

First: the execution of the written guaranty, and admitted that plaintiff demanded payment of the account after March 1, 1914;

Second: That the purchases of Mrs. Reber were made more than nine years after the date and delivery of the agreement, and that defendant is not liable or indebted to plaintiff;

Third: That by the terms of the agreement, plaintiff was required to make settlement for purchases each month, at the expiration thereof, and that defendant was entitled to reasonable notice of any default, in order to protect himself from accumulating liability by revoking the agreement; that plaintiff's failure to notify defendant within a reasonable time of said default as to goods sold in the month of June, 1912, prevented him from taking proper steps to protect himself, and that the payment by Mrs. Reber on account, subsequently made by her, fully paid all the account for which the defendant should be liable;

Fourth: That the cause of action was barred by virtue of the Statute of Limitations of the State of Pennsylvania.

Plaintiff's reply was a general denial.

The cause was tried by the court without the aid of a jury, a jury having been waived by both parties.

The written guaranty sued upon and filed with the petition, is, in words and figures, as follows:

"GIMBEL BROTHERS.

"Philadelphia, Dec. 31, 1902.

"For value received and in consideration of the firm of Gimbel Brothers granting credit for merchandise purchased or to be purchased by or on account of Mrs. G. B. Reber, at present residing at 4406 Market Street, Philadelphia, to an amount not exceeding five hundred

dollars per month, I hereby agree to become responsible as surety for the payment of and will pay on demand said monthly accounts. Notice of separate transactions is waived. This surety is to continue from month to month until revoked by me in writing and the amount due thereon is settled in full to date of receipt of said notice of revocation.

"Dated this 31st day of Dec. 1902.

"(Signed) J. P. MITCHELL.

"Witness: CHAS. BERGH.

"This guaranty and promise to pay is accepted.

GIMBEL BROTHERS,

Per"

At the time of the execution and delivery of this agreement, plaintiff was engaged in business in the City of Philadelphia, Pennsylvania, and both Mrs. Reber and defendant were residents of that state. It seems that about the year of 1895, Mrs. Reber began making purchases from the plaintiff. During the year 1899, she was required to give security to plaintiff, which she did on October 9th of that year, in the sum of $200, signed by defendant. About three years later, or, to be exact, on December 31, 1902, she gave the additional guaranty, signed by the defendant, as set out above. Mrs. Reber paid all moneys due plaintiff, up to June 1, 1912, and on the 30th of June of that year she was short in her payments for that month in the sum of $230.15, and in July, $180.40. She was also short in her payments for the months of August, September, October, November and December following, and also for the months of January, February, March, May, June and September, 1913, and February, 1914, in a total sum of $1,097.17. From August, 1912 to September, 1913, she had paid on this account, $605, leaving a balance due plaintiff of $492.17. At the time these payments were made by Mrs. Reber, no directions were given as to what particular months these payments should apply, so far as the testimony shows, neither is it shown how they were applied by plaintiff, except as payment on account.

After judgment for defendant, plaintiff brings its case here by appeal.

A further reference to the testimony will be made in the course of this opinion.

It is urged that the court erred in permitting defendant to testify as to his understanding of his liabilities under this written guaranty, at the time of its execution. Parol testimony is not admissible to vary the terms of a written contract, where the meaning is plain and unmistakable. [Third National Bank of St. Louis v. St. Charles Savings Bank, 244 Mo. 554, 149 S. W. 495.]

This case was tried before the court without the aid of a jury, and we set out below all the testimony with reference to this point complained of:

"Mr. Hall: Q. I will ask you whether when you executed this agreement you intended to limit your liability as to monthly purchases or as to a number of monthly purchases?

Mr. Greensfelder: I object to that as irrelevant, incompetent and immaterial. The contract speaks for itself. It is self-serving. He might come in here and say he only intended to be liable for one month.

The Court: I will permit him to answer that because I think it is material. I think undoubtedly he had some sort of limit placed on his liability, and having the right to revoke at any time I think he can say how far he intended to go.

Mr. Greensfelder: I submit it is trying to change the form and provisions of the contract itself.

The Court: The objection is overruled.

To which ruling of the Court counsel for plaintiff then and there duly excepts.

Mr. Hall: Q. I will ask you whether when you signed this contract you intended to limit your liability under the contract?

Mr. Greensfelder: I object to that for the reason that what his intentions were in his own mind is entirely incompetent, irrelevant and immaterial.

The Court: Q. Before you answer, what was her business? A. I think I could call her a purchasing agent.

Q. For whom? A. Customers throughout the country. She formerly lived in the country. They would write to her to buy certain things for them and she purchased and got a commission out of Gimbel Brothers.

Mr. Greensfelder: Q. Are you sure she got a commission from Gimbel Brothers? A. She told me she got a commission from Gimbel.

Mr. Greensfelder: I object to that.

The Court: Sustained.

The Court: Q. State the amount of liability that you had intended to assume under this agreement?

Mr. Greensfelder: I object to the Court's question for the reasons heretofore stated.

A. My understanding was that they would not credit her with more than $500 in any month and if she did not pay in a reasonable time I would be notified. I never expected to be held up for more than a month and a half.

Mr. Greensfelder: I submit the last part of answer be stricken out.

The Court: Sustained, and as to the part of his answer with reference to being notified.

Mr. Greensfelder: I will ask that all of the answer be stricken out for the reasons heretofore stated.

Mr. Hall: Q. State whether you expected or intended to be held responsible for a running account from month to month? A. No, sir.

Mr. Greensfelder: I object to that question and answer, and ask that they be stricken out.

The Court: Sustained."

It will be noted, from reading this colloquy between court and counsel, the only question which defendant answered, and which answer remained in the record, was:

"My understanding was that they would not credit her with more than $500 in any month."

This would not be reversible error, because this statement is conceded, by both plaintiff and defendant, to be a correct statement of what the guaranty means.

The Statute of Limitations of the State of Pennsylvania, although pleaded by defendant, was never introduced in evidence, and therefore it cannot be considered or relied upon. [Sec. 6281, R. S. 1909; Smith v. Aultman, 120 Mo. App. 462, 96 S. W. 1034; Sterling v. Parker-Washington Company, 185 Mo. App. 192, 170 S. W. 1156.]

It is next contended that the agreement sued upon is an unconditional, continuing promise to pay, except as to the amount of goods purchased in any one month, and that upon her failure to pay, action may be maintained directly against defendant without prior demand upon him or notice to him of nonperformance by Mrs. Reber. On this proposition, hinges the result of the case, as this is the principal point urged by appellant and contested by respondent.

There is no well settled rule for guidance in construing the terms of a written guaranty such as is here before us. It has been held that where the terms of a written guaranty are susceptible of two constructions, the one least favorable to the party using the terms, will be adopted. [Shine's Administrator v. The Central Savings Bank, 70 Mo. 524.] Also that the terms of a written guaranty are to be strictly construed in favor of the guarantor. [Fiester v. Drozda, 171 Mo. App. 604, 154 S. W. 441.] However, it is equally well settled that in construing contracts of this character, the court will apply the rules and tests applied in the construction of other contracts, when undertaking to determine the real meaning of the contract and the language used. [Kansas City etc. v. Youmans, 213 Mo. 151, 112 S. W. 225.] It is not contended here, that notice of acceptance of the guaranty by the plaintiff, was necessary. Therefore, this phase of the question is out of the case.

Appellant contends that it was not necessary to notify defendant at the end of the first month in which Mrs. Reber defaulted or failed to meet her purchases, namely, June 30, 1912, in order to make defendant liable, as no notice from plaintiff to defendant was required. This,

we think, is a correct statement of the law, so far as it goes. It was not necessary for plaintiff to give defend- ant this notice immediately after June 30, 1912, in order to make defendant liable for Mrs. Reber's purchases for the month of June, provided said purchases did not ex- ceed the amount of $500.

We do think however, a proper construction of this written guaranty would require the giving of notice within a reasonable time after the discovery of default, to allow defendant to revoke his guaranty of future pur- chases, if he so desired. If plaintiff failed to give such notice, when it knew Mrs. Reber was failing to meet these monthly payments, then defendant was deprived of his opportunity to revoke, and should not be held liable for purchases made by Mrs. Reber after her monthly default of June, 1912.

We think this was a continuing guaranty, but it con- tinued from month to month. If it be held, as appellant contends it should be, that plaintiff was not required to give defendant any notice upon the discovery of Mrs. Reber's failure to meet these monthly payments, so long as her purchases did not exceed $500 per month, then this guaranty would mean a guaranty of $6000 in one year; $12,000 in two years; or $18,000 in three years. It would also mean that this liability might be incurred in the short space of three years, for which defendant could be held, without ever having had any notice of failure to meet any of these payments. This was certainly not the intention of the guarantor, nor the understanding of the parties accepting this guaranty.

It was shown that Mrs. Reber was insolvent. Plain- tiff objected to the $200 guaranty which had been given in 1899, and insisted on further security. It seems that Mrs. Reber ordered goods for others from the plaintiff, a department store, and made her remittances monthly. In view of these circumstances, it could not be said that defendant intended to obligate himself in any such un- limited way. We think this written guaranty contem- plated monthly settlements. Defendant made himself

liable for the payment of these monthly accounts, not to exceed $500, but it was plaintiff's duty to notify him when learning of the first default, occurring at the end of the month of June, 1912, or within a reasonable time thereafter, and before extending further credit. No notice was given until March 1, 1914. Suit was filed in November, 1914. Mrs. Reber's payments made after August 1, 1912, more than paid the accounts overdue for June and July, 1912, and defendant should not be held liable longer than two months without notice.

Plaintiff contends it did not know where defendant was located, so as to give him notice. If it could not locate defendant when default was first discovered in these payments, then it should have refused to extend further credit to Mrs. Reber. Defendant certainly had a right to revoke this guaranty. "Unless the terms of a continuing guaranty forbid it, the law writes into it a power on the part of the guarantor to revoke it." [1 Brandt on Suretyship & Guaranty (3 Ed.), sec. 184.]

It may be contended that defendant was presumed to know, or to ascertain for himself, whether or not Mrs. Reber was meeting these payments promptly, but this was a matter peculiarly within the knowledge of plaintiff, and which defendant could not be expected to know unless notified by plaintiff.

It is a rule of law, supported by the best reasoned cases, that where the knowledge of default is such as falls within the peculiar knowledge of plaintiff, then it should notify defendant of such default, in order to enable him to revoke his guaranty. [Nelson Mfg. Co. v. Shreve, 94 Mo. App. 518, 68 S. W. 376; Gerke v. Brewing Company, 22 Ohio Circuits 671.]

We think the judgment was for the right party. The Commissioner recommends that it be affirmed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed.

*Reynolds, P. J., Allen* and *Becker, JJ.,* concur.